UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>                                       Plaintiff,<br><br>     v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC., et al.,<br><br>                                       Defendants. | Case No. 2:20-cv-01955-KJD-VCF<br><br>**ORDER – Granting Motion to Dismiss** |

Presently before the Court is specially-appearing Defendant Fidelity National Title Group, Inc.'s ("FNTG") Motion to Dismiss (#46). Plaintiff filed a response in opposition (#50) to which Defendant replied (#54). Because the Court finds that Plaintiff has failed to make a prima facie showing of specific personal jurisdiction over FNTG, FNTG's Motion to Dismiss is granted.

I.      Factual and Procedural Background

This action arises from a title insurance policy dispute between Fidelity National Title Insurance Group, Inc., Fidelity National Title Insurance Company (collectively, "Defendants"), and U.S. Bank National Association ("Plaintiff"), regarding real property located in Las Vegas, Nevada ("Property"). (#1-1).

As alleged in the Complaint, in 2005, Liberty American Corp. ("Lender") provided a $233,750.00 loan to Milagros Raon and Elpidio Raon ("Borrowers") to finance the purchase of the Property. Id. at 13. The Property is subject to the Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") for Eldorado Neighborhood Second Homeowners Association ("HOA"). Id. at 12. The CC&Rs, including Article III, Section 3.1, creates the HOA's lien and establishes that the owners of properties governed by the HOA covenant and agree to pay all regular and special assessments. Moreover, Article III, Section 3.1 of the CC&Rs states that the covenant to pay assessments is to run with the land and operate as a continuing lien on the

Property. Id. Thus, pursuant to the CC&Rs, an owner of property governed by the HOA covenants to pay assessments, and those assessments constitute a charge on the land secured by a continuing lien that has encumbered the property since the CC&Rs were recorded. Id. By purchasing the Property, Borrowers covenanted to pay the HOA annual assessments or charges. Id. at 13.

Following the purchase, Borrowers executed a deed of trust ("Deed of Trust"), providing a security interest in the Property in favor of Lender. Id. The Deed of Trust was subsequently assigned to Plaintiff. Id. As part of the loan origination, Lawyer's Title Insurance Corporation ("Lawyer's Title") entered into a contractual relationship with Lender as the insured on a lender's title insurance policy ("Policy"), numbered 02002547, to insure that the Deed of Trust was superior to competing liens, including the HOA's lien. Id. Defendant Fidelity National Title Insurance Company ("FNTIC") is the successor-in-interest to Lawyer's Title. Id. Defendants are responsible for providing coverage that insured the Deed of Trust in first position over all other liens and other representations contained in the Policy. Id. The Policy obligates the insurer to pay the costs, attorneys' fees, and expenses incurred in defense of the title or the lien of the Deed of trust, as insured. Id. At the time it provided the Policy to Lender, FNTIC was aware of the HOA's CC&Rs, the HOA's lien for unpaid assessments, and the fact that the lien could take priority over the Deed of Trust pursuant to NRS Chapter 116. Id. at 14.

Approximately six years later, in or around 2011, Borrowers ceased making payments to the HOA for monthly assessments, in violation of their covenant under Article III, Section 3.1 of the CC&Rs. Id. at 15. On December 2, 2013, the HOA sold the Property at foreclosure, conveying it to Samsara investments LLC Series #3 ("Samsara") in exchange for $9,700.00 ("HOA Sale"). Id. After the sale, Samsara filed a complaint against Plaintiff seeking a declaration that the Deed of Trust was extinguished by the HOA Sale. Id. The litigation resulted in a settlement under which Plaintiff reconveyed its Deed of Trust. Id. at 16. Plaintiff incurred significant attorneys' fees and costs defending its interest in the Property. Id.  As such, on or about August 14, 2014, Plaintiff submitted a claim under the Policy to FNTIC ("Claim"). Id. In its Claim, Plaintiff identified the Policy provisions that provided coverage for losses caused by the HOA's foreclosure of its

purportedly senior lien and requested that FNTIC fulfill its obligations to defend Plaintiff in the Litigation and indemnify Plaintiff against losses. Id.

On October 9, 2014, FNTIC sent Plaintiff a letter indicating that FNTIC was denying coverage under the Policy. Id. Plaintiff sent a letter to FNTIC requesting that it reconsider its coverage determination, and on February 5, 2015, FNTIC issued a second denial of Plaintiff's claim. Id. at 18. Plaintiff since brought suit against Defendants, asserting five separate causes of action. Defendant Fidelity National Title Group, Inc., the parent corporation of Defendant FNTIC, now moves to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

II.   Legal Standard

A. Personal Jurisdiction

Whether a federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant turns on two independent inquiries: (1) whether an applicable state statute potentially confers personal jurisdiction over the defendant and (2) whether such assertion of such jurisdiction accords with constitutional principles of due process. Data Disc, Inc. v. Sys Tech. Assoc's, Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). When, as here, there is no applicable federal statute governing personal jurisdiction, the federal district court applies the longarm statute of the state in which it sits. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998); see Fed. R. Civ. P. 4(k)(1)(A). Nevada's longarm statute declares that a Nevada court "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065. Thus, Nevada permits the exercise of personal jurisdiction to the full extent permitted by due process in the United States Constitution. Pat. Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc., No. 2:08-CV-00662-JCM-LRL, 2009 WL 10703431, at *1 (D. Nev. Apr. 29, 2009).

The assertion of personal jurisdiction satisfies due process when there are "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyers, 311 U.S. 457, 463 (1940)). Personal jurisdiction may be

either general or specific. Panavision Int'l, L.P., 141 F.3d at 1320.

General jurisdiction exists when there are "substantial" or "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to those contacts. Daimler AG v. Bauman, 571 U.S. 117, 122 (2014). As a result, the proper inquiry for general jurisdiction is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id. at 119 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "Only a select 'set of affiliations with the forum state' will expose a defendant to such sweeping jurisdiction." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Daimler AG, 571 U.S. at 137).

On the other hand, for a state court to exercise specific personal jurisdiction, "the suit must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017) (quoting Daimler AG, 571 U.S. at 127). Thus, specific personal jurisdiction "covers defendants less intimately connected to the forum state, but only as to a narrower class of claims." Ford Motor Co., 141 S. Ct. at 1024. Ultimately, "[w]hether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment' . . . [to] ensure that 'a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiff[] bear[s] the burden of demonstrating that jurisdiction is appropriate." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). When, as here, the motion hinges on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). In such cases, "[the court] only inquire[s] into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction." Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).

**B. Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

III. Analysis

FNTG argues that because it is not "at home" in Nevada, it is not subject to general jurisdiction in Nevada. (#46, at 4). FNTG further argues that because it has not purposefully availed itself of the privileges of conducting business in Nevada, and the claims against it do not arise out of forum-related activities, it is also not subject to specific jurisdiction in Nevada. Id. at 8-10. Lastly, FNTG argues that because Plaintiff has not adequately alleged an alter ego relationship between it and FNTIC, Plaintiff has failed to allege a claim for which relief may be granted. Id. 12-15.

In response, Plaintiff argues that "[t]his Court has jurisdiction over [FNTG] for [Plaintiff's] claims for declaratory judgment, breach of contract, bad faith, and violations of NRS 686A.310 through the imputation of FNTIC's contacts to [FNTG] based on alter ego and agency theories." (#50, at 16). Plaintiff further argues that "[t]his Court has jurisdiction over [FNTG] for [Plaintiff's] claim for violations of the [Nevada Deceptive Trade Practices Act ("NDTPA")] based on [FNTG's] own acts that were purposefully directed to and caused harm in Nevada." Id.

at 16-17.

In reply, FNTG again argues that this Court lacks personal jurisdiction over it and that it is not directly liable under the NDTPA because it and Plaintiff never had any kind of contractual relationship. (#54, at 2, 11-12).

**A.  Personal Jurisdiction**

In this action, Plaintiff only argues that FNTG is subject to specific jurisdiction in Nevada. A district court uses a three-part test to determine whether it may exercise specific jurisdiction over a nonresident defendant: (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017).

Under the first prong of the specific-jurisdiction inquiry, "purposeful availment" and "purposeful direction" are distinct concepts. Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1107 (9th Cir. 2020). For claims sounding in contract, a court generally applies a "purposeful availment" analysis and asks whether a defendant has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (citations omitted). For claims sounding in tort, a court generally applies a "purposeful direction" test and looks to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. Id. Here, Plaintiff has asserted a tort claim and numerous contract claims. (See #1-1, at 19-29).  However, as all of Plaintiff's claims depend upon the existence of an underlying contract, the title insurance policy, the claims all sound in contract, as opposed to tort. See Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 625

(9th Cir. 1996). Therefore, the Court will undertake a "purposeful availment" analysis in determining whether Plaintiff has made out a prima face case of specific personal jurisdiction.

      a. <u>Purposeful Availment</u>

Plaintiff argues that FNTG "purposefully availed itself of the privilege of doing business in Nevada through its agent and alter ego, FNTIC." (#50, at 17). "It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." <u>Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1134 (9th Cir. 2003). However, "a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent."[1] <u>Id.</u> As Plaintiff has alleged that FNTIC is both FNTG's alter ego and agent, the Court will address each theory in turn.

      i. <u>Agency</u>

Plaintiff argues that because FNTIC is an agent of FNTG, its actions in Nevada can be imputed to FNTG, establishing that FNTG purposefully availed itself of the privilege of doing business in Nevada. (#50, at 17-18). "Fundamental tenets of agency theory require that an agent act on the principal's behalf and subject to the principal's control." <u>Williams v. Yamaha Motor Co</u>, 851 F.3d 1015, 1024 (9th Cir. 2017). "Accordingly, under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." <u>Id.</u> at 1024-25. The control at issue must not only be a degree more pervasive than common features of ownership, it must veer into management by the exercise of control over the internal affairs of the subsidiary and the determination of how the company will be operated on a day-to-day basis, such that the parent has moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy. <u>Viega GmbH v. Eighth Jud. Dist. Ct.</u>, 328 P.3d 1152, 1159

---

[1] In <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 759 (2014), the Supreme Court invalidated the Ninth Circuit's agency approach for establishing general jurisdiction. However, it left open the question of whether an agency approach might justify the exercise of specific jurisdiction. <u>Williams v. Yamaha Motor Co</u>, 851 F.3d 1015, 1023 (9th Cir. 2017) (citing <u>Daimler</u>, 134 S. Ct. at 759 n.13 ("Agency relationships, we have recognized may be relevant to the existence of specific jurisdiction")). Although this Court has doubts about the continuing viability of the agency test for establishing specific jurisdiction, it will nonetheless apply the test in its analysis.

(Nev. 2014).

In arguing that FNTG asserts control over FNTIC, Plaintiff relies on three factual assertions: (1) FNTG issued express instructions to its subsidiaries regarding the underwriting requirements for issuing the various ALTA and CLTA policy and endorsement forms, (2) FNTG exercises complete control over its subsidiaries' claims handling process, and (3) FNTG directed FNTIC to deny Plaintiff's claim under the policy. (See #50, at 6).

First, the Court is not convinced that Plaintiff has demonstrated facts which support a finding that FNTG has issued instructions to its subsidiaries. In its Response, Plaintiff directs the Court to language in FNTG's allegedly authored endorsement manual for the proposition that FNTG is directly issuing instructions to its subsidiaries. See id. Specifically, Plaintiff argues that "[i]n its endorsement manual, Fidelity mandates that '[n]o endorsement in the Manual is to be issued unless the instructions associated with that endorsement are followed or any additional instructions or conditions that may be contained in other memos or directions from [Fidelity] are complied with.'" Id. In cases where a "plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." Data Disc, Inc., 557 F.2d at 1285. "Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff[.]" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Here however, the endorsement manual does not amount to a demonstrated fact because Plaintiff misquoted the actual language in the manual. (See #1-1, at 222).

In the paragraph Plaintiff quotes from, the word "Fidelity," taken to mean FNTG, never appears. See id. Instead, the word "Company" is used. See id. And at the top of the same page, the first paragraph states: "[t]his Endorsement Manual ('Manual') is prepared exclusively for the use of employees and agents of the Fidelity National Title Group, Inc. family of title insurance companies ('Company') which includes: Alamo Title Insurance, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, and Fidelity National Title Insurance Company." Id. When read in its entirety, the Court finds that this page indicates instructions were issued to FNTG's subsidiaries, not that FNTG was the one issuing them, a very different

understanding than the one argued by Plaintiff. See id.; (#50, at 6). Moreover, as asserted by FNTG and reinforced by the declaration of Jacob Ancona ("Ancona"), the litigation support manager and counsel for Fidelity National Financial, Inc. ("FNF"), FNTG has no employees. (#46, at 3; #46-1, at 2). If FNTG has no employees, it logically follows that FNTG cannot issue directives to its subsidiaries. Therefore, the Courts find that Plaintiff has not demonstrated facts sufficient to create a dispute regarding its allegation.

Second, the Court is not convinced that FNTG exercises complete control over its subsidiaries' claims handling processes. In support of its argument, Plaintiff directs the Court to language in its Complaint, three attached exhibits, and simply asserts that "[FNTG's] Claims Department processes claims submitted under title insurance policies underwritten by all of [FNTG] wholly owned subsidiaries, including FNTIC." (#50, at 6). First off, by directing the Court back to its Complaint, Plaintiff is resting on its bare allegations, which it can only do when the allegations are uncontroverted. See Schwarzenegger, 374 F.3d at 800. Here, they are not. As stated in Ancona's declaration, "[n]one of the claims personnel involved in the administration of the title insurance claim at issue in this litigation (or any other title insurance claim) are employed by FNTG. FNTG does not actively engage in any business activities." (#46-1, at 2). As Plaintiff's allegation is directly contradicted by Ancona's affidavit, without more, it will not suffice to demonstrate facts necessary to establish personal jurisdiction. Furthermore, Plaintiff attempts to imply that FNTG has an employee and, consequently, exercises control over FNTIC, by citing three exhibits of claim denials issued by three of FNTG's subsidiaries. (See #50-1:3). As all three denials are signed by Emily M. Gordon, Senior Claims Counsel, the Court has inferred that Plaintiff is attempting to imply that Emily M. Gordon works for FNTG.[2] See id. However, as previously stated, FNTG doesn't have any employees; therefore, Emily M. Gordon does not work for FNTG, and Plaintiff has failed to dispute this fact.

Third, the Court finds that Plaintiff has failed to demonstrate facts supporting its allegation that "[FNTG] directed FNTIC to deny [its] claim under the Policy." (See #50, at 6); Data Disc,

---

[2] All three exhibits list Emily Gordon's email as Emily.Gordon@fnf.com. (See #50-1:3). As FNF is the abbreviated name for Fidelity National Financial, Inc., a different entity than FNTG, the Court finds this as further evidence that Emily Gordon is not employed by FNTG.

Inc., 557 F.2d at 1285. As stated previously, Plaintiff cannot simply rest on its bare allegations, which is precisely what is happening here. (See #50, at 6); Schwarzenegger, 374 F.3d at 800. Plaintiff's Response merely cites the Complaint without offering more. (See #50, at 6). Ancona's declaration makes clear that "[n]one of the claims personnel involved in the administration of the title insurance claim at issue in this litigation (or any other title insurance claim) are employed by FNTG" (#46-1, at 2), and as Plaintiff has offered nothing to rebut this declaration, besides its own allegation, the only logical conclusion is that FNTG did not direct FNTIC to deny Plaintiff's claim. Accordingly, the Court finds that Plaintiff has failed to establish personal jurisdiction over FNTG through the agency theory of specific jurisdiction.

        ii.   Alter Ego

Plaintiff further argues that FNTG is liable for FNTIC's conduct because FNTIC is FNTG's alter ego. (#50, at 7, 17). "The alter ego theory allows plaintiffs to pierce the corporate veil to impute a subsidiary's contacts to the parent company by showing that the subsidiary and the parent are one and the same." Viega GmbH, 328 P.3d at 1157. Under Nevada law, to satisfy the alter ego test, Plaintiff must show: (1) the corporation is influenced and governed by the person asserted to be the alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice. LFC Mktg. Grp., Inc. v. Loomis, 8 P.3d 841, 846–47 (Nev. 2000). In arguing that the first element is met, Plaintiff's Response states the following: "[FNTG's] total control over FNTIC's underwriting, coverage positions, and claims handling process, discussed in more detail above, satisfy the first element." (#50, at 8). The Court treats this single sentence as a reiteration of Plaintiff's arguments for its agency theory of personal jurisdiction. Therefore, as Plaintiff has not provided any new legal reasoning for this element, the Court adopts its prior reasoning and concludes that Plaintiff has failed to establish that FNTG influences and governs FNTIC. Furthermore, as Plaintiff has failed to establish the first element, the Court does not need to address Plaintiff's arguments regarding the remaining two elements. See N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co., 471 P.2d 240, 243 (Nev. 1970) ("Each . . . [element] must be

present before the alter ego doctrine can be applied."). Accordingly, the Court finds that Plaintiff has failed to establish personal jurisdiction over FNTG through the alter ego theory of specific jurisdiction. As such, the Court finds that it lacks jurisdiction over Defendant Fidelity National Title Group, Inc.

### B. Failure to State a Claim

FNTG argues that because "[Plaintiff] has not adequately alleged an alter-ego relationship between FNTG and [FNTIC]", the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), must dismiss Plaintiff's cause of action against it. (#46, at 12-13). However, as the Court has no personal jurisdiction over FNTG, adjudication of its 12(b)(6) argument is improper.

### C. Jurisdictional Discovery

In its Response, Plaintiff argues it should be permitted to conduct "[jurisdictional] discovery regarding the discrepancies in the Ancona declaration, [FNTG's] relationship with FNTIC, and [FNTG's] ties to the forum." (#50, at 24). "[Jurisdictional] discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003). In arguing that jurisdictional discovery should be permitted, Plaintiff asserts that "[t]here are publicly available documents that dispute and contradict the contents of the Ancona affidavit." (#50, at 23). Specifically, Plaintiff argues: (1) that FNTG's endorsement manual and three exhibits of claim denials "support a finding that the entities are so interconnected such that FNTIC's contacts should be imputed to [FNTG]" and (2) "[Ancona's] statement that [FNTG] has no employees is directly contradicted by [FNTG's] own website, which identifies five individuals that list [FNTG] as their employer." Id.

First, as stated above, the endorsement manual and claim denials are not enough to contradict Ancona's affidavit or even amount to a factual dispute. While Plaintiff is correct that conflicts between parties over statements contained in affidavits must be resolved in Plaintiff's favor, that is not the case the Court is now presented with. See id. at 23-24. When addressing the question of whether FNTG has employees or actively engages in any business activities, the endorsement manual and claim denials are simply not enough to raise a dispute regarding the facts stated in

1  Ancona's affidavit—that FNTG has no employees and does not actively engage in any business
2  activities. Plaintiff is essentially asking the Court to look at these documents and infer
3  jurisdictional facts that are not demonstrated by the documents themselves—the Court will not
4  do this.
5      Second, Plaintiff attempts to argue that FNTG's own website identifies individuals that list
6  FNTG as their employer. (#50, at 23). In support of its argument, Plaintiff supplied the Court
7  with a link to FNTG's website and a printout of the exact webpage. Id.; (see #50-8, at 2-3).
8  While the website link does not list anyone as an employee of FNTG, the printout does show
9  multiple executives with the phrase "Fidelity National Title Group" listed beneath their photo.
10 (See #50-8, at 2-3). However, as argued by FNTG, and explained in Ancona's affidavit, there is
11 a difference between the Fidelity National Title Group of Companies, which is a trade name used
12 to collectively refer to several companies and sometimes abbreviated to "FNTG," and Defendant
13 Fidelity National Title Group, Inc. (See #46-1, at 2; #54, at 8-9). In drawing this distinction,
14 FNTG argues that nowhere on the webpage does the entity "Fidelity National Title Group, Inc."
15 appear, and when listing the entity that each of the executive members works for, the entry
16 designates the entity fully. (#54, at 8-9). In reviewing Plaintiff's exhibit, the Court does notice
17 that there is a difference between how a specific corporation is referenced versus how the trade
18 name is referenced. (See #50-8, at 2-3). Because the webpage does include "Inc." when referring
19 to Fidelity National Financial, Inc., it makes sense that "Inc." would also be included when
20 referring to Defendant FNTG. However, as the Court does not see any reference to Fidelity
21 National Title Group, Inc. on Plaintiff's exhibit, only Fidelity National Title Group, the Court
22 agrees with FNTG that the webpage is discussing the trade name and not Defendant FNTG.
23     Lastly, separate from its Response, Plaintiff submitted an affidavit from Lindsay Dragon,
24 counsel of record for Plaintiff. (#51). Lindsay Dragon's affidavit seeks, among other things, to
25 depose Jacob Ancona, arguing that "[t]his deposition is needed to confirm/dispute the facts and
26 discrepancies contained in the [a]ffidavit." Id. at 4. However, what it does not do is dispute any
27 facts stated in Ancona's affidavit. (See #51); cf. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th
28 Cir. 2001) (holding that conflicts between the facts contained in the parties' affidavits must be

1   resolved in plaintiffs favor for purposes of deciding whether a prima facie case for personal
2   jurisdiction exists). As the Court has repeatedly stated, Ancona's affidavit makes perfectly clear
3   that FNTG has no employees and does not actively engage in business activities, yet Plaintiff
4   wants to depose Ancona in the hopes that he changes his answers. Plaintiff's discovery request is
5   nothing more than a hunch that it might yield jurisdictionally relevant facts, a request this Court
6   is not inclined to grant. See Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008)
7   (concluding that the denial of plaintiff's request for discovery, which was based on little more
8   than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion). As
9   such, Plaintiff's jurisdictional discovery request is denied.

### D. Leave to Amend

Lastly, Plaintiff argues that if the Court grants dismissal of any of its claims, it should be granted leave to amend and correct any defects in its Complaint. (#50, at 24). "Although leave to amend a deficient complaint shall be freely given when justice so requires, leave may be denied if amendment of the complaint would be futile." Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010) (citation omitted). In concluding that personal jurisdiction over FNTG is not appropriate, the Court struggles to envision any amendment that would persuade the Court that jurisdiction over FNTG is indeed appropriate; and Plaintiff has not raised any such amendment in its Response. (See #50, at 24); Doe v. Compania Panamena de Aviacion, No. 21-55983, 2022 WL 1658229, at *2 (9th Cir. 2022) (concluding that the district court did not abuse its discretion when it denied plaintiff leave to amend for failing to specify what additional allegations could be made in favor of personal jurisdiction). Therefore, Plaintiff's request for leave to amend is denied as futile.

//
//
//
//
//
//

IV. <u>Conclusion</u>

Accordingly, **IT IS HEREBY ORDERED** that Defendant Fidelity National Title Group, Inc.'s Motion to Dismiss (#46) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Fidelity National Title Group, Inc. are dismissed without prejudice.

Dated this 19th day of January 2024.

_____
Kent J. Dawson
United States District Judge