UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> FIDELITY NATIONAL TITLE GROUP INC., et al., <br><br> Defendants. | Case No. 2:20-cv-01955-KJD-VCF <br><br> **ORDER – Granting Motion to Dismiss** |

Presently before the Court is Defendant Fidelity National Title Insurance Company's ("FNTIC") Motion to Dismiss (#45).[1] Plaintiff filed a response in opposition (#60) to which Defendant replied (#70). Plaintiff's response also consisted of a countermotion for partial summary judgment. (#60). For the reasons stated below, FNTIC's motion is granted.

I.     **Factual and Procedural Background**

This action arises from a title insurance policy dispute between Fidelity National Title Insurance Group, Inc., Fidelity National Title Insurance Company (collectively, "Defendants"), and U.S. Bank National Association ("U.S. Bank"), regarding real property located in Las Vegas, Nevada ("Property"). (#1-1).

As alleged in the Complaint, in 2005, Liberty American Corp. ("Lender") provided a $233,750.00 loan to Milagros Raon and Elpidio Raon ("Borrowers") to finance the purchase of the Property. Id. at 13. The Property is subject to the Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") for Eldorado Neighborhood Second Homeowners Association ("HOA"). Id. at 12. The CC&Rs, including Article III, Section 3.1, creates the HOA's lien and establishes that the owners of properties governed by the HOA covenant and agree to pay all regular and special assessments. Moreover, Article III, Section 3.1 of the CC&Rs states that the

---

[1] Defendant Fidelity National Title Group, Inc. ("FNTG") is no longer a party to this action. (See #86) (dismissing FNTG from the present action due to lack of personal jurisdiction). As such, any reference to "Defendant" hereinafter is specifically directed towards FNTIC.

1  covenant to pay assessments is to run with the land and operate as a continuing lien on the
2  Property. Id. Thus, pursuant to the CC&Rs, an owner of property governed by the HOA
3  covenants to pay assessments, and those assessments constitute a charge on the land secured by a
4  continuing lien that has encumbered the property since the CC&Rs were recorded. Id. By
5  purchasing the Property, Borrowers covenanted to pay the HOA annual assessments or charges.
6  Id. at 13.

7  Following the purchase, Borrowers executed a deed of trust ("Deed of Trust"), providing a
8  security interest in the Property in favor of Lender. Id. The Deed of Trust was subsequently
9  assigned to Plaintiff. Id. As part of the loan origination, Lawyer's Title Insurance Corporation ("
10 Lawyer's Title") entered into a contractual relationship with Lender as the insured on a lender's
11 title insurance policy ("Policy"), numbered 02002547, to insure that the Deed of Trust was
12 superior to competing liens, including the HOA's lien. Id. Defendant Fidelity National Title
13 Insurance Company ("FNTIC") is the successor-in-interest to Lawyer's Title. Id. Defendants are
14 responsible for providing coverage that insured the Deed of Trust in first position over all other
15 liens and other representations contained in the Policy. Id. The Policy obligates the insurer to pay
16 the costs, attorneys' fees, and expenses incurred in defense of the title or the lien of the Deed of
17 trust, as insured. Id. At the time it provided the Policy to Lender, FNTIC was aware of the
18 HOA's CC&Rs, the HOA's lien for unpaid assessments, and the fact that the lien could take
19 priority over the Deed of Trust pursuant to NRS Chapter 116. Id. at 14.

20 Approximately six years later, in or around 2011, Borrowers ceased making payments to the
21 HOA for monthly assessments, in violation of their covenant under Article III, Section 3.1 of the
22 CC&Rs. Id. at 15. On December 2, 2013, the HOA sold the Property at foreclosure, conveying it
23 to Samsara investments LLC Series #3 ("Samsara") in exchange for $9,700.00 ("HOA Sale"). Id.
24 On August 14, 2015, Plaintiff submitted a claim under the Policy to FNTIC, seeking coverage
25 for losses resulting from the HOA's foreclosure. Id. at 16. On October 9, 2014, FNTIC sent
26 Plaintiff a letter indicating that FNTIC was denying coverage under the Policy. Id. Plaintiff sent
27 a letter to FNTIC requesting that it reconsider its coverage determination, and on February 5,
28 2015, FNTIC issued a second denial of Plaintiff's claim. Id. at 18. On December 8, 2015,

Samsara filed a complaint against Plaintiff seeking a declaration that the Deed of Trust was extinguished by the HOA Sale. Id. at 15. The litigation resulted in a settlement under which Plaintiff reconveyed its Deed of Trust. Id. at 16. On October 8, 2020, following the resolution of the lawsuit with Samsara, Plaintiff brought suit against Defendants, asserting five separate causes of action. FNTIC now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.     Legal Standard**

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to dismiss into a motion for summary judgment. Patel v. Am. Nat'l Prpty & Cas. Co., 367 F. Supp. 3d 1186, 1191 (D. Nev. 2019).

### III. Analysis

FNTIC argues that U.S. Bank's first and second causes of action fail as a matter of law because Plaintiff settled the quiet title action without providing them notice. (#45, at 12-14). Furthermore, FNTIC argues that U.S. Bank's third, fourth, and fifth causes of action must be dismissed as they are barred by the statute of limitations. Id. 7-12. Conversely, U.S. Bank argues that by expressly denying coverage, FNTIC waived any rights to control the underlying quiet title action; thus, notice was not required. (#60, at 16-18). Moreover, U.S. Bank further contends that the statute of limitations was tolled until the underlying litigation was resolved because FNTIC's duty to defend was triggered. Id. at 21-24. Accordingly, the Court will first address whether U.S. Bank's first and second causes of action fail as a matter of law.

#### A. Declaratory Judgment and Breach of Contract

FNTIC argues that U.S. Bank's first and second causes of action—declaratory judgment and breach of contract—fail as a matter of law because U.S. Bank settled the lawsuit involving Samsara without providing notice to them, constituting a violation of condition 8(c) of the Policy.[2] (#45, at 12-14). Condition 8(c) of the Policy reads as follows:

> The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company. (#4-2, at 4).

In response, U.S. Bank argues that FNTIC waived its right to enforce condition 8(c) when it denied its claims, citing the holding in St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 201 U.S. 173, 181 (1906) ("Dressed Beef") as support for this argument. (See #60, at 16-18). However, after analyzing the holding in Dressed Beef, the Court finds it inapplicable to the factual context of the current matter.

In Dressed Beef, the plaintiff notified the defendant, in writing, that two lawsuits had been

---

[2] Throughout the Court's analysis reference is made to a copy of a blank jacket of the form title policy issued in this case, which was originally attached as an exhibit to FNTIC's previous Motion to Dismiss. Although not attached to the Complaint, the Court may consider this evidence because the Complaint references the document, namely the title insurance policy ("Policy"), which is central to U.S. Bank's claim, and neither party questions the authenticity of the copy attached to the 12(b)(6) motion. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Moreover, the Court references the copy attached to FNTIC's previous motion, rather than the copy attached to its current motion, solely because U.S. Bank cites it in its response. As such, the citation for this evidence will be "#4-2."

initiated against them and requested that the defendant undertake the defense of the lawsuits as provided for in its policy. Id. at 176. The defendant declined to undertake the defense, and subsequently, the plaintiff settled the lawsuits. Id. The plaintiff sought to hold the defendant liable for the settlement payments, but the defendant maintained that they were not liable under the policy because the plaintiff was not allowed to settle any claim without the consent of the company. See id. at 175-180. The Supreme Court went on to hold that when an insurer declines to undertake the defense of the insured in a lawsuit, the insurer can no longer demand compliance with the specific terms of the policy. See id. at 181. The issue here is that U.S. Bank never attempted to tender defense of the lawsuit to FNTIC, and it couldn't have because there was no actual lawsuit pending. In Dressed Beef, there was an actual lawsuit that the defendant flat out rejected to defend. See 201 U.S. at 176. Because of this difference, the Court rejects U.S. Bank's application of Dressed Beef to the current matter.

In fact, the only communication between U.S. Bank and FNTIC regarding the possibility of a lawsuit is found in U.S Bank's title insurance claim, which was sent to FNTIC on August 14, 2014. (See #60-12, at 2-3). U.S. Bank's claim stated as follow:

> We are, by this letter, making a claim against the above-mentioned title policy, requesting and tendering defense of our client in this case. . . . A title insurance problem has arisen through litigation instituted by a third-party purchaser at a non-judicial foreclosure sale of a homeowner's association ("HOA") lien on the above-referenced real property ("Property"). The HOA purchaser has purchased the property and we expect they will seek to quiet title the property once the bank starts moving forward with foreclosure. . . . We are making the claim and bringing this matter to your attention before a lawsuit has been filed by the third party buyer as one will undoubtedly be filed at some point by the third party buyer.

Id. Given that this statement was sent fifteen months before Samsara even filed suit against U.S. Bank, the Court has no problem concluding that this communication is an insufficient attempt to tender defense of the lawsuit to FNTIC. The logic for this is relatively straightforward—an insured can't tender defense of a lawsuit that doesn't exist. Therefore, because U.S. Bank settled the lawsuit without providing notice to FNTIC, condition 8(c) of the Policy is controlling, and FNTIC is not liable to U.S. Bank for any loss or damage it suffered. (See #4-2, at 4). As such, U.S. Bank has failed to plead facts for which relief may be granted, and its first and second

- 5 -

causes of action must be dismissed. See Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) ("[O]nly a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss.").

**B.  Time-Barred Claims**

In actions arising from an insurer's failure to defend, it is settled law that the statute of limitations is tolled until the underlying litigation is resolved. See Home Sav. Ass'n v. Aetna Cas. & Sur. Co., 854 P.2d 851, 855 (Nev. 1993); see also Lambert v. Commonwealth Land Title Ins. Co., 811 P.2d 737, 739 (Cal. 1991) ("Although the statutory period commences upon refusal to defend, it is equitably tolled until the underlying action is terminated by final judgment."). Therefore, the Court will first address whether FNTIC's duty to defend arose, and subsequently, its effect on the statute of limitations.

   i.  Duty to Defend

An insurance policy creates two contractual rights duties between the insurer and the insured: the duty to indemnify and the duty to defend. Century Sur. Co. v. Andrew, 432 P.3d 180, 183 (Nev. 2018). Under Nevada Law, the duty to defend "attaches when the insured tenders defense of the lawsuit to the insurer." Allstate Ins. Co. v. Miller, 212 P.3d 318, 325 (Nev. 2009); see also Century Sur. Co., 432 P.3d at 184 ("In Nevada, [the duty to defend] arises if facts [in a lawsuit] are alleged which if proved would rise to the duty to indemnify, which then the insurer must defend.") (simplified). If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured. United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004).

In the present matter, the factual circumstances surrounding FNTIC's duty to defend are encompassed by two separate events. The first event began when the HOA foreclosed and sold the Property to Samsara on December 2, 2013, and concluded on October 9, 2014, when FNTIC issued a denial of U.S Bank's claim. The second event began when Samsara filed a complaint against U.S. Bank on December 8, 2015, and concluded on April 26, 2019, when the parties reached a settlement. Therefore, to trigger the duty to defend, which would effectively toll the statute of limitations for claims related to event one, U.S. Bank was required to tender defense of

the lawsuit to FNTIC. See Allstate Ins. Co., 212 P.3d 325; see also Lambert, 811 P.2d at 739 ("The duty [to defend] commences under tender of the defense, and continues until the underlying lawsuit is concluded."). However, U.S Bank's partial summary judgment section of its motion attempts to argue that third-party litigation is not the only way to trigger FNTIC's duty to defend, and that the Policy implies a much broader duty to defend beyond simply defending against the HOA purchaser's lawsuit.³ (See #60, at 14-16). The Court disagrees, but it will nonetheless conduct an analysis of the arguments raised by U.S. Bank.

First, U.S. Bank argues that the plain language of the Policy supports a broader duty to defend beyond pending litigation against itself. See id. at 15. U.S. Bank asserts that language in Section 4(d) of the Policy, specifically, "defense of . . . the lien of insured mortgage, as insured," supports this argument.⁴ Id. However, upon reviewing U.S. Bank's quoted language, the Court finds that U.S. Bank has seriously misrepresented language in the Policy to the Court. Section 4(d) of the Policy reads as follows:

> In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation. to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(#4-2, at 4).

---

³ Although U.S Bank's argument regarding FNTIC's duty to defend is mainly found in its summary judgment section, the Court interprets this argument as part of its response to FNTIC's motion. (See #60, at 14-16). Otherwise, the Court finds that U.S. Bank's actual response, located in the motion to dismiss section, amounts to little more than the general assertion that the claims are timely. See id. at 21-24.

⁴ While not expressly stated in U.S. Bank's motion, Section 4(d) of the Policy is the only section that the Court could identify containing the language U.S. Bank now cites.

A close reading of this paragraph clearly indicates that there is no broad obligation to automatically defend the lien of the insured mortgage. (See #4-2, at 4). What it does say, however, is that the Company may seek the aid of the insured in any lawful act which in the opinion of the Company may be necessary to establish the title to lien of the insured mortgage. An entirely different interpretation than the one asserted by U.S. Bank. Essentially, U.S. Bank is asking the Court to interpret the Policy in a manner that would result in FNTIC's duty to defend being triggered in almost every situation. Not only does the Court find this interpretation illogical, but it would also negate established caselaw that defines the circumstances under which the duty to defend arises. The Court is unwilling to adopt such an interpretation.

Second, U.S. Bank argues that the Policy sets forth multiple options for Defendant to comply with its duty to defend that are clearly not contingent upon pre-existing litigation, such as "(1) filing an affirmative quiet title/declaratory relief suit to confirm the viability of the Deed of Trust under Section 4(b); (2) paying off the insured claimant to relinquish any claim under Condition 6(b)(ii); or (3) paying the insured claimant the remaining loan balance under Condition 6(a)(ii)." Id. The flaw in U.S. Bank's argument lies in their assumption that FNTIC is obligated to undertake the actions suggested. However, there is no explicit mandate within the Policy compelling FNTIC to engage in any of the activities proposed by U.S. Bank. (See #4-2, at 4).

Third, U.S. Bank argues that the duty to defend is triggered when the insurer ascertains facts which give rise to the potential of liability under the policy. (See #60, at 15). While the Court agrees with U.S. Bank's legal argument, it disagrees with its application to the current case. See generally Century Sur. Co. v. Andrew, 432 P.3d 180, 183 (Nev. 2018). U.S. Bank's motion fails to point to any facts that should have alerted FNTIC to this possibility. (See #60, at 15). As stated above, U.S. Bank never notified FNTIC of any lawsuit and only mentioned the possibility of one 15 months before it was actually filed. Simply stating that a lawsuit may happen, without more, is not enough to trigger an insurer's duty to defend. If that was the case, a plaintiff could simply bypass any legal argument regarding whether the duty was triggered by merely claiming a lawsuit may come in the future. The Court once again finds this outcome to be illogical.

In raising the insurer's duty to defend, the onus on the insured is almost nothing. Here, all

U.S. Bank had to do was send FNTIC an email stating that they were sued and are tendering defense of the lawsuit to them. In fact, language in the Policy reminds them of this very fact. (See #4-2, at 4). Specifically, "Upon written request by the insured . . . , the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured[.]" Id. Why U.S. Bank did not simply notify FNTIC is anyone's guess, but its attempt to now circumvent an already low bar is unpersuasive. As such, the Court finds that FNTIC's duty to defend was never triggered. See Allstate Ins. Co., 212 P.3d at 325.

      ii.   Statute of Limitations

As FNTIC's duty to defend was never triggered, the Court next considers whether U.S. Bank's third, fourth, and fifth causes of action were timely filed. The Court finds that they were not timely filed.

### A. Breach of the Covenant of Good Faith and Fair Dealing

FNTIC argues that U.S. Bank's third cause of action, alleging bad faith and breach of the covenant of good faith and fair dealing, is time-barred. (#45, at 10-12). In Nevada, the duty of good faith and fair dealing arises not from the terms of an insurance contract but is imposed by law, the violation of which is a tort. See U. S. Fid. & Guar. Co. v. Peterson, 540 P.2d 1070, 1071 (Nev. 1975).  A bad faith tort claim is controlled by the four-year statute of limitations covering actions upon a liability not founded upon an instrument in writing. Schumacher v. State Farm Fire & Cas. Co., 467 F. Supp. 2d 1090, 1094 (D. Nev. 2006); see Nev. Rev. Stat. § 11.190(2)(c). FNTIC denied U.S. Bank's claim on October 9, 2014. (See #1-1, at 16). U.S. Bank waited until 2020 to file its claim. (#60, at 8). As U.S. Bank waited more than four years to file its claim and has failed to convince the Court that the statute of limitations should be tolled, the Court dismisses U.S. Bank's breach of the covenant of good faith and fair dealing claim.

### B. Deceptive Trade Practices under and NRS § 41.600 and § 598.0915

FNTIC argues that U.S. Bank's fourth cause of action, a violation of NRS § 598.0915, is time-barred. (#45, at 9-10). In response, U.S. Bank argues that the claim is not time-barred because it was not aware of its claims against FNTIC until it discovered their internal

memoranda and guidelines. (#60, at 22-23). The Court agrees with FNTIC.

Claims arising under NRS § 598.0915 have an applicable statute of limitations of four years, which begins "when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice." See Nev. Rev. Stat. § 11.190(2)(d). Although not expressly stated, U.S. Bank attempts to imply that it took them two years to discover the facts constituting the deceptive trade practice. (See #60, at 22-23). The Court rejects this argument outright. FNTIC first denied U.S. Bank's claim on October 9, 2014, and then subsequently denied Plaintiff's request for reconsideration on February 5, 2015. At a minimum, Plaintiff should have discovered facts constituting the deceptive trade practice by the date of the second denial—February 5, 2015. Even so, U.S. Bank did not file its claim for another 5 years. As U.S. Bank waited more than four years to file its claim and has failed to convince the Court that the statute of limitations should be tolled, the Court dismisses U.S. Bank's NRS § 598.0915 claim.

### C.  Unfair Claim Practices Under NRS § 686A.310

FNTIC argues that U.S. Bank's fifth cause of action, a violation of NRS § 686A.310, is time-barred. (#45, at 7-8). "A claim based on violation of Nev. Rev. Stat. § 686A.310 must be filed within three years of the triggering event." Williams v. Travelers Home & Marine Ins. Co., 740 F. App'x 134 (9th Cir. 2018) (citing NRS § 11.190(3)(a)). The limitations period begins when the insurer formally denies the claim. See id. It is undisputed that FNTIC denied U.S. Bank's claim on October 9, 2014. (#1-1, at 16). U.S. Bank waited until 2020 to file its claim. (#60, at 8). As U.S. Bank waited more than three years to file its claim and has failed to convince the Court that the statute of limitations should be tolled, the Court dismisses U.S. Bank's NRS 686A.310 claim. See US Bank Nat'l Ass'n v. Fid. Nat'l Title Ins. Co., No. 2:19-CV-00970-KJD-BNW, 2023 WL 2955378, at *8 (D. Nev. Apr. 14, 2023) (finding claim timed barred because it was filed more than three years after formal denial).

### D.  Leave to Amend

FNTIC also asks the Court to dismiss U.S. Bank's Complaint without leave to amend. (#45, at 14). FNTIC argues that U.S. Bank cannot present any factual pattern that would suffice to

state a cause of action against them. Id. In response, U.S. Bank argues that leave to amend must be freely given "when justice so requires." (#60, at 24). "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." Wheeler v. City of Santa Clara, 894 F.3d 1046, 1059 (9th Cir. 2018). As the Court has firmly concluded that U.S. Bank failed to tender defense of the lawsuit to FNTIC—a lynchpin in the Court's analysis—any amendment attempting to allege new facts would be futile. Accordingly, leave to amend is denied.

### IV.     Conclusion

Accordingly. **IT IS HEREBY ORDERED** that Defendant Fidelity National Title Insurance Company's Motion to Dismiss (#45) is **GRANTED**; and all claims against Fidelity National Title Insurance Company are **DISMISSED**.

Dated this 25th day of March 2024.

_____
Kent J. Dawson
United States District Judge